# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   v.                                                                    **Case No. 17-CR-212**

**NAKUL CHETIWAL**
        **Defendant.**

## STATEMENT OF REASON MEMORANDUM

In this case, members of an impersonation scheme located in India called individuals in the United States and made misrepresentations to them (typically, that they owed taxes or other debts), inducing the victims to wire money to locations directed by the callers. Defendant Nakul Chetiwal acted as a "runner" for the scheme, using fraudulent identification cards to pick up fraud proceeds, which he then forwarded (after receiving a 7% cut) to others in the conspiracy. Over a three month period, defendant picked up about $140,000 from 139 different victims.

Defendant pleaded guilty to conspiracy to commit wire fraud, 18 U.S.C. §§ 1343, 1349, and I set the case for sentencing. In imposing sentence, the district court must first calculate the advisory sentencing guideline range, then consider the arguments of the parties and the factors set forth in 18 U.S.C. § 3553(a), making an individualized assessment based on the facts presented. United States v. Pankow, 884 F.3d 785, 793 (7th Cir. 2018). After settling on the appropriate sentence, the court must adequately explain the chosen sentence. Id. This memorandum sets forth reasons for the sentence imposed on defendant Chetiwal.

## I. GUIDELINE CALCULATION

Defendant's pre-sentence report ("PSR") set a base offense level of 7, U.S.S.G. § 2B1.1(a)(1); added 8 levels based on a loss amount between $95,000 and $150,000, U.S.S.G. § 2B1.1(b)(1), 2 levels because the offense involved more than 10 victims, U.S.S.G. § 2B1.1(b)(2)(A), and 2 levels because a substantial part of the scheme was committed from outside the United States, U.S.S.G. § 2B1.1(b)(10); then subtracted 3 levels for acceptance of responsibility, U.S.S.G. § 3E1.1, for a final level of 16. Defendant had no prior record, so the PSR set the criminal history category at I, producing an imprisonment range of 21-27 months.

Defendant argued that he should received a reduction for mitigating role in the offense pursuant to U.S.S.G. § 3B1.2. That guideline provides for a 4-level reduction for "minimal participants," U.S.S.G. § 3B1.2(a), a 2-level reduction for "minor participants," U.S.S.G. § 3B1.2(b), and a 3-level reduction for cases falling in between. It thus "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2 cmt. n.3(A).

The minimal participant reduction is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. U.S.S.G. § 3B1.2 cmt. n.4. The minor participant reduction applies to a defendant who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal. U.S.S.G. § 3B1.2 cmt. n.5. In determining whether to apply a 4- or 2-level reduction, or an

2

intermediate adjustment, the court should consider the degree to which the defendant understood the scope and structure of the criminal activity; the degree to which the defendant participated in planning or organizing the criminal activity; the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and the degree to which the defendant stood to benefit from the criminal activity. U.S.S.G. § 3B1.2 cmt. n.3(C). The defendant bears the burden of proving by a preponderance of the evidence that a role adjustment is warranted. See United States v. Sandoval-Velazco, 736 F.3d 1104, 1107 (7th Cir. 2013).

In arguing for a reduction in his case, defendant indicated that he had little understanding of the scope and structure of the scheme, played no part in planning or organizing it, and acted as a simple courier, at the direction of others, and for limited gain. The government opposed the reduction, noting that defendant's role in the scheme was essential to its success, as this kind of fraud cannot succeed without individuals in the United States who pick up the proceeds and send them on to others outside the country. The government further noted that defendant's conduct was repetitive in nature, that he must have known the victims wired the money based on misrepresentations, that he appeared to have some discretion in the manner in which he conducted the pick-ups, and that his 7% cut amounted to almost $10,000 over a three month period.

I found the issue debatable. Defendant did appear to serve a menial role in a scheme devised by others. Further, as indicated in the application notes, the fact that a defendant performs "an essential or indispensable" task is not determinative. "Such a defendant may

3

receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2 cmt. n.3(C). Similarly, a defendant who is held accountable for a loss amount "that greatly exceeds the defendant's personal gain from a fraud offense or who had limited knowledge of the scope of the scheme may receive an adjustment under this guideline." U.S.S.G. § 3B1.2 cmt. n.3(A).

On the other hand, identifying the "average participant" in this criminal activity was difficult, as the defendants charged in the instant indictment occupied similar roles as couriers, and the record did not contain a detailed description of the roles of the others not charged in this case (including the ostensibly more culpable parties who operated from India). While the fact that couriers are essential to the success of a scheme like this does not bar a reduction, the cases suggest that couriers are not, without more, entitled to a reduction. See, e.g., United States v. Covarrubias, 678 Fed. Appx. 415, 417 (7th Cir. 2017).[1]

The Seventh Circuit has encouraged district judges to bypass debatable issues in the calculation of the guidelines if the issues turn out not to matter, and to state on the record whether the sentence would have been the same if the debated issue had come out the other way. See United States v. Hawkins, 777 F.3d 880, 885 (7th Cir. 2015). I followed that course here, considering defendant's role in the offense in imposing an appropriate sentence under § 3553(a).

---

[1] The Sentencing Commission recently revised the commentary to U.S.S.G. § 3B1.2, indicating that the court should focus on the defendant's role in the particular criminal activity at issue, rather than comparing his role to the universe of persons participating in similar crimes. United States Sentencing Commission, United States Sentencing Commission Guidelines Manual, Supplement to Appendix C 115-16 (2016) (Amendment 794).

4

## II. SECTION 3553(a)

**A.     Sentencing Factors**

Section 3553(a) directs the sentencing court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory sentencing guideline range;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing: just punishment, deterrence, protection of the public, and provision of needed correctional treatment. Id. While the court must as part of its analysis consider the type and range of sentence recommended by the guidelines, it "may not perfunctorily impose a guidelines sentence or even presume that

5

such a sentence is appropriate in a given case." United States v. Warner, 792 F.3d 847, 855 (7th Cir. 2015).

**B.      Analysis**

    **1.      The Offense**

As indicated above, unknown members of a scheme originating from India called the victims, fraudulently indicated that they owed money, and induced the victims to wire money through a wire service, such as MoneyGram or Western Union. Other members of the conspiracy (known as "runners"), including the defendants charged in this indictment, then used fraudulent identification cards to pick up the proceeds. Typically, "handlers" (who were sometimes in the United States and sometimes in India) would use voice calls or text messages in order to communicate the details (such as location of the pick-up, the amount of the pick-up, the sender's name, and the fraudulent identification to be used) of the next fraudulent MoneyGram that the runner should retrieve. The runners then kept a relatively small portion of the proceeds and passed the rest on to other members of the scheme. From at least May 24, 2017, until August 29, 2017, defendant Chetiwal personally used 12 different fraudulent identities to pick up about $140,000 from 139 different victims in 152 separate transactions.

During the pre-sentence interview, defendant stated that he became involved in this scheme because he needed money. His savings were running out, and he was unable to find employment to meet his and his brother's monthly expenses. When he first learned about the fraudulent opportunity, he decided not to participate. However, he later learned that his roommate (and co-defendant) was involved in the scheme and said it was a good thing. He

then became involved, usually receiving 7% of the total wire transfer. He did not make a significant amount of money or spend it on clothes, cars, or parties, but rather used the money for living expenses. He estimated he was involved in the scheme for a total of three months. He realized what he was doing was wrong, but he did not realize how big and serious the scheme was. During his allocution, defendant expressed genuine remorse for his involvement.

### 2. The Defendant

Defendant was 28 years old, with no prior record. Born in India, he came to the United States in December 2013 when his father, a diplomat, was stationed in Georgia. Defendant and his brother also attended college in Georgia. Defendant met a woman at school, and they later married.

Defendant's parents moved to Kenya in December 2016 when his father got a different assignment. Defendant remained in Georgia with his brother, who had serious back problems, requiring two surgeries; although their parents left some money, they had trouble supporting themselves. Defendant left school to try to find work, but he could not obtain steady, formal employment in the United States. It was during this period of financial hardship that he joined the scheme.

The PSR indicated that, according to ICE records, defendant was legally admitted on a student Visa. Defendant indicated that he later obtained a different type of Visa after he withdrew from school and planned to seek employment. He was, however, subject to deportation after completion of his sentence in this case. He did not appear to have any substance abuse problems or other correctional treatment needs.

7

### 3. The Sentence

The guidelines called for a term of 21-27 months' imprisonment, as calculated in the PSR,[2] and I found a period of confinement warranted to reflect the seriousness of these kinds of schemes, which prey on vulnerable people, and to deter others from involving themselves in such schemes. The victim impact statements made clear how serious and harmful these schemes are, causing not just financial harm but also anxiety, guilt, and family tension.

Defendant argued for a sentence of time served, which amounted to about 8 months. In finding that recommendation sufficient, I first considered defendant's specific role in this scheme. He basically acted as a runner or courier, picking up proceeds, which he forwarded to others. He did not devise the scheme or make the fraudulent representations to the victims, and his share of the proceeds was small. He received about $10,000, less expenses, for three months of driving around and collecting these transfers. It also appeared that defendant acted out of financial desperation, rather than a desire to live lavishly, succumbing to the lure of making relatively easy money offered by a roommate already involved in a scheme devised by others.[3] A term below the range sufficed to provide just punishment given defendant's particular conduct, level of culpability, and motive.

I also noted that defendant had, since his arrest in November 2017, been confined in

---

[2] With a 4-level reduction for minimal role, the range would have been 12-18 months; with a 2-level reduction for minor role, the range would have been 15-21 months.

[3] The guideline range was increased, not just by the large loss amount represented by the total defendant collected, which far exceeded his personal gain, but also by the enhancement for commission of a substantial part of the scheme from outside the United States, a circumstance that, while relevant, lacked a significant connection to defendant's personal culpability, as he played no role in deciding the location from which the scheme would originate.

8

local jails, harder time than that spent in a federal prison facility, and that due to his inability to make the bail set by the court in Georgia, where he initially appeared, he went through the difficult process of transfer to Wisconsin in custody. I further considered the other consequence that would follow his conviction – removal from the country in which defendant was lawfully residing. He would likely be unable to return here in the future – to attend college or reconcile/reunite with his wife.

A time served sentence also sufficed to protect the public; defendant had no prior record, and with this scheme, which he got into through a roommate, disrupted, he appeared to pose very a low risk of recidivism. A term below the range also sufficed for purposes of specific deterrence, as defendant had never served time before. Ordinarily, a lesser period of imprisonment will suffice to deter a defendant not previously subject to incarceration, as opposed to a defendant who has already served serious time yet continues to re-offend. United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005).

Finally, I took into account the time served sentence I imposed on a co-defendant, Parvez Jiwani, who occupied a similar role as a courier. The government had recommended a below guideline sentence for Jiwani based on his cooperation with authorities and his health issues, circumstances that did not apply ro defendant Chetiwal. Despite these differences, the comparison remained relevant. Jiwani's level of participation was somewhat greater – 293 transactions involving 232 victims and causing a loss of about $250,000 – and defendant Chetiwal spent about one additional month in custody given the timing of his case.

Under all the circumstances, I found a sentence of time served sufficient but not greater than necessary to satisfy the purposes of sentencing. This sentence was based on § 3553(a) and would have been the same regardless of the guidelines and the objection.

9

### III.  CONCLUSION

I accordingly committed defendant to the custody of the Bureau of Prisons for a period of time served.  I imposed no supervised release, consistent with the recommendation in U.S.S.G. § 5D1.1(c), as supervision was not required by statute, and defendant would likely be deported and unavailable for active supervision.  I did require him to make restitution in the total amount of $139,634.70 to the victims of the scheme listed in the PSR.

Dated at Milwaukee, Wisconsin, this 23rd day of July, 2018.

/s Lynn Adelman
LYNN ADELMAN
District Judge